F I L E D

CLERK, U.S. DISTRICT COURT

4/15/24

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ V. Figueroa _____ DEPUTY

1

2  Erica A. Maharg (Bar No. 279396)
   Email: eam@atalawgroup.com
3  AQUA TERRA AERIS LAW GROUP
   4030 Martin Luther King Jr. Way
4  Oakland, CA 94609
   Telephone: (510) 473-8793
5

6  Barak Kamelgard (Bar No. 298822)
   Email: barak@lawaterkeeper.org
7  Benjamin Harris (Bar No. 313193)
   Email: ben@lawaterkeeper.org
8  LOS ANGELES WATERKEEPER
   360 E 2nd Street, Suite 250
9  Los Angeles, CA 90012
   Phone: (310) 394-6162
10

11                                              JS-6

12 Attorneys for Plaintiff
   LOS ANGELES WATERKEEPER
13

14            UNITED STATES DISTRICT COURT
15            CENTRAL DISTRICT OF CALIFORNIA

16
   LOS ANGELES WATERKEEPER, a          Case No.: 2:23-cv-08431-FMO-BFM
17 California non-profit association,
                                        **CONSENT DECREE**
18            Plaintiff,
19
20       v.
21 STABOND CORPORATION, a
   California corporation,
22
23
24            Defendant.
25

26

27

28

CONSENT DECREE

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Stabond Corporation ("Defendant") operates a facility at 1722 W. 139th Street, Gardena, CA 90249, under Waste Discharger Identification number 4 19I004462 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of manufacturing specialty adhesives, sealants, and coatings. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2891, covering Industrial Applications and Services—Adhesives & Sealants;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable,

1

best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

WHEREAS, on July 26, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

WHEREAS, on October 6, 2023, LA Waterkeeper filed a complaint against Defendant in the Central District of California, Civil Case No. 2:23-cv-08431-FMO-BFM ("Complaint");

WHEREAS, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Dominguez Channel, the Domingez Channel Estuary, the Los Angeles/Long Beach Harbor, and the Pacific Ocean ("Receiving Waters");

WHEREAS, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree

setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.	The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.	Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.	The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.	LA Waterkeeper has standing to bring this action.

5.	The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

**I.	OBJECTIVES**

6.	It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.      AGENCY REVIEW AND CONSENT DECREE TERM

### A.      AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.      <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.      <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.      DEFINITIONS

11.      Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.  "BAT" means the Best Available Technology Economically Achievable.

b.  "BCT" means the Best Conventional Pollutant Control Technology.

c.  "BMPs" means Best Management Practices.

d.  "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.  "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.  "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

g.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.  "MIP" means a Monitoring Implementation Plan.

j.  "PPT" means Pollution Prevention Team.

k.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

l.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

m.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

n.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

o.  "SWPPP" means a Storm Water Pollution Prevention Plan.

p.  "Term" means the period between the Effective Date and the "Termination Date."

q.  "Termination Date" means the latest of:

   i.  June 30 following five (5) years from the Effective Date;

   ii.  seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following five (5) years after the Effective Date; or

   iii.  seven (7) calendar days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

   iv.  However, should Defendant's industrial activities at the Facility cease during the Term hereof, Defendant's affirmative obligations hereunder, except for any payment and data retention obligations and any obligations with respect to compliance for the portion of the calendar year Defendant was operating at the Facility, shall cease upon the Regional Board's approval of a Notice of Termination for the Facility.

r.  "Wet Season" means the seven-month period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.   <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.   <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15. <u>Structural and Non-Structural BMPs for the Facility</u>: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

  a. Patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility, except for the shared driveway;

  b. Implement a sweeping program using a PM-10 compliant street sweeper on all paved areas at least once every two weeks and employ hand sweeping and/or vacuuming once per operational day in working areas and the adjoining/adjacent areas;

  c. Employ and secure new zinc adsorbing wattles/filters/filtration socks (such as Filtrexx EnviroSoxx or CleanWay MetalZorb) in the cement swale upgradient of Discharge Point 1 within twenty-four (24) hours prior to each forecasted rain event with a greater than 25% probability of precipitation above 0.05 inches as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Hawthorne Municipal Airport,"[1]; such wattles/filters/socks shall be placed in multiple layers as necessary to ensure maximum contact with storm water prior to discharge and shall remain in place until the rain event ceases;

  d. During the Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective;

  e. Within twenty-four (24) hours prior to a Forecasted Rain Event, cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

f.   Store zinc powder inside and under cover to prevent exposure to stormwater;

g.   (i) Open and clean all containment release valves to prevent pollutant discharge if the applicable areas need to be drained, and (ii) thereafter, open and clean all containment release valves in the same manner as otherwise necessary, and annually prior to the start of the Wet Season, no later than September 15th;

h.   Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained or uncovered debris bins and trash cans under cover;

i.   Within seven (7) days of each of the above BMPs being initially implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

**B.   SAMPLING AT THE FACILITY**

16.   Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from all Qualifying Storm Events. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If there is insufficient discharge to take a sample during a rain event, Defendant shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred and collecting the rain gauge/sensor data. Defendant shall submit such documentation to LA Waterkeeper by electronic mail to the individual(s) designated

below at Paragraph 57, within five (5) days of a written request for such records by LA Waterkeeper.

17.    Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations or a revised pollutant source assessment, such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

18.    Laboratory and Holding Time. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

19.    Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

20.    Reporting: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

C.    REDUCTION OF POLLUTANTS IN DISCHARGES

21.    Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Zinc | 0.26 mg/L | NAL |
| Cadmium | 0.0053 mg/L | NAL |
| Lead | 0.262 mg/L | NAL |
| Chemical Oxygen Demand | 120 mg/L | NAL |
| Oil & Grease | 15 mg/L | NAL |
| Total Suspended Solids | 100 mg/L | NAL |
| pH | <6.5 or >8.5 s.u. | Basin Plan |

22.     Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any storm water sample from the Facility exceeds any numeric limit contained in Table 1. An Exceedance shall constitute a violation of this Consent Decree.

23.     Action Plan for Table 1 Exceedances: As of the Effective Date, and for the remainder of the Term, if Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the unauthorized non-storm water discharge or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

a.     Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each contaminant exceedance and/or applicable unauthorized non-storm water discharge; (3) the

11

identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.   Action Plan Proposed BMPs: The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.   Hydrologic Controls: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.   Sweeping: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.   Treatment Systems: Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more

effective filtration treatment of storm water prior to discharge.

    iv.   <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.   <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.   Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28(b)(i) below.

e.   <u>Action Plan Payments</u>: Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper at the same time that the Action Plan is submitted. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles

Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.   VISUAL OBSERVATIONS**

24.   <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

25.   <u>Monthly Visual Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.   <u>Visual Observations Records</u>: Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed

activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

27.     Employee Training Program: Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

       a.     Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

       b.     Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

       c.     Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and

shall be repeated as necessary to ensure that all relevant
employees are familiar with the requirements of this Consent
Decree, the Permit, and the Facility's SWPPP. All relevant new
staff shall receive this training before assuming responsibilities for
implementing the SWPPP;

    d.    <u>Sampling Training</u>: Defendant shall designate an adequate number
of employees necessary to collect storm water samples as required
by this Consent Decree, including training to ensure samples are
properly collected, stored, and submitted to a certified laboratory;

    e.    <u>Visual Observation Training</u>: Defendant shall provide training on
how and when to properly conduct visual observations to
Designated Employees;

    f.    <u>Non-Storm Water Discharge Training</u>: Defendant shall train all
Designated Employees at the Facility on the General Permit's
prohibition of non-storm water discharges, so that Designated
Employees know what non-storm water discharges are and how to
detect and prevent non-storm water discharges;

    g.    <u>Employees</u>: All Designated Employees at the Facility shall
participate in the Training Program annually. New Designated
Employees shall participate in the Training Program within thirty
(30) days of their hiring date; and

    h.    Defendant shall maintain training records to document compliance
with this Paragraph and shall provide LA Waterkeeper with a
copy of these records within seven (7) days of receipt of a written
request.

28.    <u>SWPPP Revisions</u>:

    a.    <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's
SWPPP to incorporate the requirements in this Consent Decree

[ CONSENT DECREE

and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.     A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.    A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.   Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.    A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including without limitation the locations of downspouts at the Facility;

v.     A MIP as required by sections XI and X.I of the General Permit;

vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual

inspection of each specific area, monitoring each specific

BMP, sampling, etc.; and

    vii.   A Training Program as described above in Paragraph 27.

  b.   <u>Additional SWPPP Revisions</u>:

    i.   Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.   Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

  c.   <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to Paragraphs 28(a) and 28(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why

a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

29.    Every year during the Term, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s)

1   being collected by Defendant's representative. LA Waterkeeper shall be permitted to
2   take photographs or video recording during any Site Inspection.

3        30.   <u>Document Provision</u>. During the Term, Defendant shall notify and
4   submit documents to LA Waterkeeper as follows:

5              a.   Defendant shall copy LA Waterkeeper on all compliance
6                   documents, monitoring and/or sampling data, written
7                   communications and/or correspondences, or any documents
8                   related to storm water quality at the Facility that are submitted to
9                   the Regional Board, the State Board, and/or any state or local
10                  agency, county or municipality;

11             b.   Within three (3) business days of receipt by Defendant, send to
12                  LA Waterkeeper any compliance document, inspection report,
13                  written communication and/or correspondence, or any document
14                  related to storm water quality at the Facility received by
15                  Defendant from the Regional Board, the State Board, and/or any
16                  state or local agency, county, municipality. Defendant shall mail
17                  paper copies or email electronic copies of documents to LA
18                  Waterkeeper at the relevant notice address contained below.

19       31.   <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs
20   associated with Plaintiff's monitoring of Defendant's compliance with this Consent
21   Decree during the Term by paying Seventeen Thousand Five Hundred Dollars
22   ($17,500.00). This monitoring payment shall be made in five (5) equal installments of
23   Three Thousand Five Hundred Dollars ($3,500) per installment during the Term. In
24   the event that there is an additional Site Inspection in a given year to resolve a dispute
25   pursuant to Paragraph 29, Defendant shall reimburse LA Waterkeeper an additional
26   Three Thousand Dollars ($3,000.00) during such year. The initial installment
27   payment shall be made within thirty (30) days of the Entry Date, and then on the
28   same date in each subsequent year during the Term. Any additional payment shall be

made within thirty (30) days after any additional Site Inspection, as applicable. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.      ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.      Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waterways tributary to the Los Angeles/Long Beach Harbor, Defendant agrees to make a payment totaling Twenty-Five Thousand Dollars ($25,000.00) to the Rose Foundation. The payment shall be divided into two equal installments. The first installment payment shall be made within thirty (30) days of the Entry Date, and the second installment payment shall be due within sixty (60) days of the Entry Date. The payment shall be made payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.      LA Waterkeeper's Fees and Costs: Defendant agrees to pay a total of Forty-Two Thousand Five Hundred Dollars ($42,500.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. This payment amount shall be divided into two equal installment payments, the first payment shall be due within thirty (30) days of the Entry Date and the second payment shall be due within sixty (60) days of the Entry Date. Both payments shall

1    be made payable to: Aqua Terra Aeris Law Group, LLP, and delivered by overnight

2    carrier to 4030 Martin Luther King Jr. Way, Oakland, CA, 94609. Failure to submit

3    payment as required under this Paragraph will constitute breach of the Consent

4    Decree.

5        34.    Missed Deadlines: In the event that Defendant fails to submit to LA

6    Waterkeeper any payment, document, report, or communication required by this

7    Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars

8    ($500) per day. Such stipulated payments shall be made by check payable to: Rose

9    Foundation for Communities and the Environment, and such funds shall be used for

10   the sole purpose of funding environmentally beneficial projects, as described in

11   Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th

12   Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated

13   payment within fourteen (14) days after the resolution of the event that precipitated

14   the stipulated payment liability.

15       35.    Interest on Late Payments: Defendant shall pay interest on any

16   payments, fees, or costs owed pursuant to this Consent Decree that are not received

17   by the due date. The interest shall accrue starting the next business day after the

18   payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year

19   (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest

20   shall continue to accrue daily on any outstanding balance until Defendant is current

21   on all payments then due under this Consent Decree, and shall be paid at the same

22   time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on

23   late payments shall be paid by check payable to: Rose Foundation for Communities

24   and the Environment, and such funds shall be used for the sole purpose of funding

25   environmentally beneficial projects, as described in Paragraph 32. Payment shall be

26   sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA

27   94607.

28

## IV.     DISPUTE RESOLUTION

36.     This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.     <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

38.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims

that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.     Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter

1   into this Consent Decree. A Party's signature to this Consent Decree transmitted by
2   facsimile or electronic mail shall be deemed binding.

3       46.    <u>Construction</u>. The language in all parts of this Consent Decree shall be
4   construed according to its plain and ordinary meaning, except as to those terms
5   defined in the Permit, the Clean Water Act, or specifically herein. The captions and
6   paragraph headings used in this Consent Decree are for reference only and shall not
7   affect the construction of this Consent Decree.

8       47.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final
9   settlement of this matter.

10      48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent
11  Decree is intended to be a full and complete statement of the terms of the agreement
12  between the Parties and expressly supersedes any and all prior oral or written
13  agreements, covenants, representations, and warranties (express or implied)
14  concerning the subject matter of this Consent Decree.

15      49.    <u>Severability</u>. In the event that any provision, paragraph, section, or
16  sentence of this Consent Decree is held by a court to be unenforceable, the validity of
17  the enforceable provisions shall not be adversely affected.

18      50.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent
19  Decree.

20      51.    <u>Diligence</u>: Defendant shall diligently file and pursue all required permit
21  applications for any required BMPs and shall diligently procure contractors, labor,
22  and materials needed to complete all BMPs by the required deadlines.

23      52.    <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does
24  not mean that Defendant is complying with the General Permit, the Clean Water Act,
25  or any other law, rule, or regulation.

26      53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent
27  Decree, and agree that it shall not be construed against the party preparing it, but shall

28

be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

54.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.     <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: barak@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

<u>With copies to</u>:
Aqua Terra Aeris Law Group
Erica Maharg
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Email: eam@atalawgroup.com
Phone: (510) 473-8793

<u>If to Defendant</u>:
Jennifer Taggart
Demetriou, Del Guercio, Springer & Francis, LLP
915 Wilshire Blvd., Suite 2000
Los Angeles, CA 90017
Email: jtaggart@ddsffirm.com
Phone: (213) 624-8407

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.     If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the

Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _Feb. 26_____, 2024       By: _____
                                        Bruce Reznik
                                        Executive Director
                                        Los Angeles Waterkeeper

Dated: _FEB 27_____, 2024        By: _____
                                        John Vancura
                                        President
                                        Stabond Corporation

APPROVED AS TO FORM

                                   AQUA TERRA AERIS LAW GROUP

Dated: _Feb.26_____, 2024       By: _____
                                        Erica Maharg
                                        Attorney for Plaintiff

Los Angeles Waterkeeper

Dated: ___Feb. 28_____, 2024          By: _/s Jennifer T. Taggart_____
                                              Jennifer T. Taggart
                                              Attorney for Defendant
                                              Stabond Corporation


**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.


Dated: __April 15, 2024_____          CENTRAL DISTRICT OF CALIFORNIA


                                         _____
                                                    /s/
                                         _____
                                         HONORABLE FERNANDO M. OLGUIN
                                         United States District Judge